**Nathaniel PITTS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**CRIMINAL ACTION NO. 10–703**

United States District Court,
E.D. Pennsylvania.

January 6, 2017

414

Nathaniel Pitts, pro se.

Anthony George Kyriakakis, Dilworth Paxson LLP, William T. Cannon, William

T. Cannon, P.C., Philadelphia, PA, for Petitioner.

Mark B. Dubnoff, Bernadette McKeon, Joseph F. Minni, Peter F. Schenck, U.S. Attorney's Office, Philadelphia, PA, for Respondent.

## MEMORANDUM

### EDUARDO C. ROBRENO, Judge.

Petitioner Nathaniel Pitts ("Pitts"), who is currently a federal prisoner, filed a motion under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") seeking the return of certain property that he claims the Government seized during his arrest and the subsequent search of his home and two vehicles in September 2010. For the reasons that follow, the Court will grant in part and deny in part the motion.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Pitts is currently serving a 126–month term of imprisonment that the Court imposed after a jury convicted of him of various federal drugs and weapons offenses following a six-day trial in June 2011. On June 22, 2015, Pitts filed a pro se motion under Rule 41(g), seeking return of various property items that he alleges "were confiscated and not listed in any notice of Forfieture [sic]." Mot. Return Prop., ECF No. 150. The motion listed the following property items and locations from which Pitts believed each item had been seized:

Items in the GMC Envoy include $205 [United States currency] in center console, air pump, jumper cables, 2 sets of barber clippers with apron, basketball, gym bag with workout clothing, tool set, 2 cellular telephones, and 1 Ipod (that was mistaken as a cell phone). Items in the Black Infiniti include $200 [United

States currency] in center console, black leather jacket, dress shoes and outfit, DVD player, 20 various DVD's. Items from the House include Passport and check books.

Id.

On August 13, 2015, the Government filed a response in opposition to Pitts' Rule 41(g) motion, asserting that "the government does not have possession of the property specified in the motion, nor has it ever had possession of that property." Gov't Resp. Mot. Return Prop., ECF No. 153. It also attached a declaration of Frank Costobile ("Agent Costobile"), a Special Agent with the Drug Enforcement Administration ("DEA"), stating that, with the exception of Pitts' passport and certain checks that had already been returned to Pitts' girlfriend, the Government had never possessed the property items listed in Pitts' motion and had never taken any action to seize, forfeit, or destroy those items. Costobile Decl. ¶¶ 3–5, Gov't Resp. Mot. Return Prop. Ex. A, ECF No. 153–1.

The day after the Government filed its response, the Court entered an order that, citing Agent Costobile's declaration, denied Pitts' Rule 41(g) motion. ECF No. 155. This denial notwithstanding, Pitts filed a reply to the Government's response ten days later. ECF No. 158. Pitts attached evidence to this reply supporting at least some of his claims, including a letter describing a DEA agent's possession of "three (3) cellular telephones" along with a page from the initial arrest report noting that "PO BRADY RECOVERED $205 USC FROM INSIDE THE CENTER CONSOLE." ECF No. 158. The next day, Pitts filed a motion for reconsideration on the basis that the Court had denied his motion before allowing Pitts the opportunity to reply to the Government's response.[1] See ECF No. 159.

1. The motion stated in full as follows: "I have recently sent a traverse to the Governments

response to the Rule 41(g) motion on August

On August 31, 2015, the Court entered another order that again denied Pitts' Rule 41(g) motion. ECF No. 160. The Court also noted in this order that it would not grant reconsideration "because [Pitts] does not allege any of the cognizable grounds for [a motion for reconsideration]." Id.

On the same day the Court entered that order, it received a letter from the Government requesting additional time to respond to Pitts' reply. See ECF No. 161. The Government indicated in its letter that "government counsel has requested DEA agents assigned to this case to make further attempts to locate any of the defendant's property and/or determine the disposition of such property." Id. On September 1, 2015, the Court denied this letter request as moot. See id.

Pitts then successfully appealed the Court's orders in early winter 2016. On February 1, 2016, the Third Circuit vacated and remanded the Court's order of August 31, 2015, explaining that "the District Court erred by failing to reconsider its order denying Pitts's motion because Pitts, who had no prior opportunity to respond to Agent Costobile's declaration, presented evidence calling that declaration into question and raising factual issues that the District Court should have addressed." United States v. Pitts, 639 Fed. Appx. 105, 107 (3d Cir. 2016). It stated further that "[t]he District Court provided no explanation for instead summarily denying reconsideration in the face of the Government's request. If the District Court had awaited the Government's response, then it could and should have resolved factual disputes that the parties raised and that are continuing even on

appeal." Id. The Third Circuit "express[ed] no opinion on the merits of Pitts's Rule 41(g) motion." Id. at 108.

On March 1, 2016, the Court appointed Anthony Kyriakakis, Esquire, to represent Pitts with regard to his pending pro se Rule 41(g) motion. ECF No. 175. On March 28, 2016, Mr. Kyriakakis wrote a letter to update the Court that the Government was conducting further investigation into the whereabouts of the property described in Defendant's motion. On May 20, 2016, Mr. Kyriakakis wrote again to advise the Court that the Government's investigation was still ongoing, and thus the parties had been unable to resolve the matter. In the same letter, Mr. Kyriakakis requested that the Court schedule an evidentiary hearing to address the factual disputes referenced by the Third Circuit in its February 1, 2016 opinion.

The Court held a status conference via telephone on May 25, 2016. Following that conference, the Court issued an order dated May 25, 2016, instructing the Government to provide Pitts with a proposed resolution of his Rule 41(g) motion on or before June 24, 2016. ECF No. 178. The order further instructed Pitts to respond to the Government's proposed resolution by July 25, 2016. Id. Finally, the order instructed the Government to apprise the Court of the outcome of the proposal via letter by August 1, 2016, so that the Court could determine whether an evidentiary hearing would be necessary. Id.

On July 25, 2016, the Court received a letter from the Government informing the Court that the Government had not yet offered Defendant a proposed resolution

24, 2015 on August 25, 2015 I have received your order denying said motion I want this Court to construe the response as a Reconsideration or whatever this Court deems fit in light of the circumstances." ECF No. 159. The Court construes this motion liberally, as it

must. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) ("A document filed pro se is 'to be liberally construed' ...." (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))).

because the Government had yet to work out "certain administrative issues that the government must address internally with the DEA in order for the proposed settlement to work." Gov't Ltr., July 25, 2016. On August 12, 2016, the Government further updated the Court that, as of that date, DEA officials had not made a final decision regarding an offer to extend to Pitts. Gov't Ltr., Aug. 12, 2016. The Government indicated in this letter that "because it ha[d] not been able to reach a final settlement," it "d[id] not oppose the Court scheduling a hearing in this matter." Id.

On October 7, 2016, the Court held an evidentiary hearing on Pitts' Rule 41(g) motion. Following the hearing, the Court issued an order continuing the matter and scheduling a telephone status conference for October 14, 2016. ECF No. 183. Following the October 14, 2016, telephone conference, the Court issued an order directing the parties to submit supplemental briefing discussing the Court's authority to order the return of a defined amount of cash not subject to forfeiture. ECF No. 184. The parties timely submitted the requested supplemental briefing via letters addressed to the Court.

## II. MOTION TO RETURN PROPERTY

▮ Federal Rule of Criminal Procedure 41(g) provides as follows:

**Motion to Return Property**. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).[2] Once criminal proceedings have been terminated, a Rule 41(g) motion for the return of property is considered an independent civil action for equitable relief, and the burden is on the government to "demonstrate that it has a legitimate reason to retain the property."[3] United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999).

▮ "The burden on the government is heavy because there is a presumption that the person from whom the property was taken has a right to its return." United States v. Albinson, 356 F.3d 278, 280 (3d Cir. 2004). "The government must do more than state, without documentary support, that it no longer possesses the property at issue." Chambers, 192 F.3d at 377–78. "If ... the government asserts that it no longer has the property sought, the District Court must determine, in fact, whether the government retains possession of the property; if it finds that the government no longer possesses the property, the District Court must determine

**2.** Federal Rule of Criminal Procedure 41 was amended in 2002 "as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. 41, advisory committee's note to 2002 amendments. "As a result of the 2002 amendments, the previous Fed. R. Crim. P. 41(e) now appears with minor stylistic changes as Rule 41(g)." United States v. Albinson, 356 F.3d 278, 279 n.1 (3d Cir. 2004). The Court refers throughout this Memoran-

dum to "Rule 41(g)" but incorporates relevant case law referencing the old "Rule 41(e)."

**3.** By contrast, if a defendant moves for the return of property while a criminal prosecution against him or her is still pending, "the burden is on the movant to show that he or she is entitled to the property." United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999).

what happened to the property." Id. at 378.

■ "The District Court must hold an evidentiary hearing on any disputed issue of fact necessary to the resolution of the [Rule 41(g)] motion." Id. at 376. An evidentiary hearing is not required to resolve every factual dispute, and sometimes "affidavits or documentary evidence, such as chain of custody records, may be sufficient to support a fact finder's' determination." Albinson, 356 F.3d at 282. "But if there are disputed issues of fact relating to the status of the property or what happened to it, the district court should hold an evidentiary hearing." Id. at 284. "[T]he question of remedies should arise only after the district court has investigated the status of the seized property." Id. at 283; see also id. (holding that "a fact finder may not deny a Rule 41(g) motion based on a prospective assessment of the remedies that might (or might not) be available").

■ Courts applying Rule 41(g) generally recognize that "property" includes money allegedly seized by the government. A majority of courts, however, have declined to interpret Rule 41(g) as a waiver of sovereign immunity that would permit a claimant to receive damages in lieu of tangible property—including money—that the government has lost or destroyed. See, e.g., Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004) (joining in "the unanimous conclusion of those sister circuits that have addressed the issue: Rule 41(g), which simply provides for the return of seized property, does not waive the sovereign immunity of the United States

with respect to actions for money damages relating to such property"); Okoro v. Callaghan, 324 F.3d 488, 491 (7th Cir. 2003) ("No one supposes that Rule 41(g) was intended to waive the sovereign immunity of the federal government."); United States v. Hall, 269 F.3d 940, 943 (8th Cir. 2001) ("Rule 41(e) does not contain the explicit waiver of sovereign immunity required to authorize monetary relief against the government when property cannot be returned."); United States v. Potes Ramirez, 260 F.3d 1310, 1316 (11th Cir. 2001) ("[S]overeign immunity protects the government from money damages sought under Rule 41(e)."); United States v. Jones, 225 F.3d 468, 470 (4th Cir. 2000) ("Rule 41(e) does not contain a waiver of sovereign immunity."); Pena v. United States, 157 F.3d 984, 986 (5th Cir. 1998) ("Rule 41(e) makes no provision for monetary damages, and we will not read into the statute a waiver of the federal government's immunity from such damages.").

■ The Third Circuit has adhered to the majority view, holding that Rule 41(g) "provides for one specific remedy—the return of property." United States v. Bein, 214 F.3d 408, 415 (3d Cir. 2000); see also United States v. Hernandez, No. 95–0296–001, 2006 WL 618429, at *1 (M.D. Pa. Mar. 9, 2006) ("[T]he Third Circuit ... prohibits the award of monetary damages on a Rule 41(g) motion ...."). Consequently, courts within this Circuit may not award monetary damages in a Rule 41(g) proceeding to substitute for money or any other item that the Government may have lost.[4] Further, "a defendant has no right to the return of his property if the govern-

---

4. A petitioner seeking the return of money or other items that the Government has apparently lost may perhaps have alternative avenues by which to seek redress, possibly including the Federal Tort Claims Act ("FTCA"). See, e.g., Hernandez, 2006 WL 618429, at *3 ("A federal prisoner claiming that prison personnel negligently lost his property states a cause of action under the Federal Tort Claims Act ...." (citing 28

U.S.C. § 1346(b) (permitting litigation against the United States "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment"))). It is also not entirely out of the question that a petitioner in this situation might have a potential Bivens claim against the appropriate parties. See, e.g., Mi-

ment has a continuing interest in the property, such as in a forfeiture action or an outstanding lien." United States v. Wallace, 213 Fed.Appx. 98, 99 (3d Cir. 2007) (per curiam) (citing United States v. Premises Known as 608 Taylor Ave., Apartment 302, 584 F.2d 1297, 1302 (3d Cir. 1978)).

■■■ Here, an evidentiary hearing revealed—and the parties no longer dispute—that the Government currently possesses the following items it previously seized from Pitts: a set of jumper cables, a wrench from a tool set, and an HTC cellular telephone. See Evid. Hr'g. Tr., Oct. 7, 2016, ECF No. 186, at 117:13–18; see also

Gov't Ltr. Br., Oct. 19, 2016, at 3 n.2. For the most part, Government does not object to returning these items to Pitts. See Gov't Ltr. Br., Oct. 19, 2016, at 3 n.2. The Court therefore will order their return.[5]

■■■ Further, the Government now concedes that it seized $205 in United States currency from the center console of the GMC Envoy. See Gov't Ltr. Br., Oct. 19, 2016, at 1; Evid. Hr'g. Tr. at 110:10–20. The Court declines to order the return of this $205, however, because the Government has apparently lost it, and this Court is without authority to order monetary damages as a substitute remedy.[6] See

---

tan v. United States Postal Inspection Serv., 656 Fed.Appx. 610, 613–15 (3d Cir. 2016) (rejecting Bivens claim based on allegedly unlawful retention of property not because such a claim cannot exist, but instead only because the officers' actions in that case "did not constitute a violation of [the plaintiff's] clearly established Fourth Amendment rights"); Crawford v. Roselli, 639 Fed.Appx. 807, 809–10 (3d Cir. 2016) (per curiam) (rejecting Bivens claim based on FBI agents' alleged misappropriation of arrestee's currency not because such a claim cannot exist, but instead only because the arrestee in that case had abandoned any reasonable expectation of privacy he might have had with respect to the seized currency). The Court does not opine here whether these avenues are available in this or any other case.

5. This includes the HTC cellular telephone. In a footnote to its supplemental letter brief submitted after the evidentiary hearing, the Government argued without any citation or further explanation that "because [Pitts] continues to pursue litigation against the government regarding his conviction in this case, the government needs to maintain the HTC telephone for evidentiary purposes." Gov't Ltr. Br., Oct. 19, 2016, at 3 n.2. Insofar as this constitutes an objection to returning the HTC cellular telephone, the Court finds this unsupported footnote insufficient to meet the "heavy" burden the Government must overcome to defeat the "presumption that the person from whom the property was taken has a right to its return." Albinson, 356 F.3d at 280. Accordingly, the Court will order the return of the HTC cellular telephone along

with the jumper cables and wrench currently in the Government's possession.

6. The Court rejects the Government's argument that this $205 was part of Pitts' criminal forfeiture. See, e.g., Gov't Ltr. Br. at 2 ("[DEA agents] aggregated all currency taken from the Envoy into one lump sum, that totaled $31,495.00 taken from the trap compartment and center console. The $31,495.00 included the $205 located in the Envoy's center console. The government thereafter commenced a civil action to forfeit this currency and other property seized in this case."); see also Evid. Hr'g. Tr. at 5:4–11, 75:12–22. The complaint for forfeiture clearly limits the forfeited amount from the GMC Envoy to the cash recovered from the "hidden compartment" in that vehicle:

[A] hidden compartment was located inside Pitts's Envoy where the front passenger's airbag was supposed to be. Inside the compartment officers found $31,495 in cash and a [T]upperware container containing 8.4 grams of cocaine powder.

Compl. for Forfeiture In Rem, July 18, 2011, United States v. $86,400 in United States Currency, et al., No. 11–4538, ECF No. 1, at ¶ 13. This is significant because, as Pitts explains in his supplemental letter brief, "the government further alleged that cocaine powder was found inside the same 'hidden compartment,' providing a basis for forfeiture," and "[t]hus, if the government had in fact sought to forfeit that cash, which it did not, Mr. Pitts would have been in a position to argue that the $205 was not subject to forfeiture because it was

Bein, 214 F.3d at 415 (prohibiting the award of monetary damages in Rule 41(g) proceedings).

■ The parties acknowledged during the evidentiary hearing that "inconsistencies" in the testimony presented there raise some question as to whether the Government might still possess certain other items that Pitts seeks, including a Lotus cellular telephone, an iPod, additional pieces of the tool set, several DVDs and/or CDs, and a brown leather jacket. Evid. Hr'g. Tr. at 103:11–17. Because these items cannot be located, however, and the Court lacks power under Rule 41(g) to order any remedy other than specific performance, the Court declines to order the return of these currently lost or missing items.[7]

## III. CONCLUSION

For the foregoing reasons, the Court will grant Pitts' Rule 41(g) motion insofar as it seeks the return of the jumper cables, wrench, and HTC cellular telephone. Pitts' motion is also granted with regard to Pitts' passport and checkbooks, which the parties agree have already been returned to Pitts' girlfriend. The Court will deny Pitts' Rule 41(g) motion insofar as it relates to all other items.

An appropriate order follows.

not related to a drug transaction or any other criminal activity." Pet.'s Ltr. Br., Oct. 27, 2016, at 2 (quoting Compl. for Forfeiture In Rem, July 18, 2011, $86,400 in United States Currency, et al., No. 11–4538, ECF No. 1, at ¶ 13).

7. This presents a "catch–22" that has been recognized previously by other courts:

On the one hand, Chambers demands that this Court engage in an inquiry as to what happened to the lost or missing property and decide on an appropriate remedy. On the other hand, Bein forecloses the only appropriate remedy in a case where the government has lost or destroyed personal

## ORDER

**AND NOW**, this **6th** day of **January, 2017**, upon consideration of Petitioner's motion for return of property (ECF No. 150), the Government's response in opposition thereto (ECF No. 153), Petitioner's reply in opposition to the Government's response (ECF No. 158), and Petitioner's motion for reconsideration (ECF No. 159), and following a hearing held on the record with counsel for both parties on October 7, 2016, it is hereby **ORDERED** as follows:

1) Petitioner's motion (ECF No. 150) is **GRANTED** with regard to the following property items:

 a. Set of jumper cables

 b. Wrench (from tool set)

 c. HTC cellular telephone

 d. Passport and checkbooks [8]

2) No later than **February 6, 2017**, Petitioner shall **provide the Government with a written, signed authorization** indicating the specific name and address of the person to whom the property should be returned.

3) Once it has received Petitioner's authorization, the Government shall **return the above-mentioned property** to Petitioner's designated agent as soon as practicable, but no later

property: money damages. In other words, Bein makes the inquiry required by Chambers an exercise in futility, because even if the Court were to conclude after a hearing that a Rule 41[g] petitioner was entitled to the return of property, and that the government improperly disposed of the property, the Court is powerless to award the only available remedy.

Albinson, 356 F.3d at 282 (quoting United States v. Albinson, No. 00–929, 2001 WL 43779, at *5 (E.D. Pa. Jan. 16, 2001)).

8. The parties do not dispute that the Government has already returned these items to Petitioner's girlfriend.

than **30 days after receipt of signed authorization.**

4) Except as to the specific items listed above, Petitioner's motion for return of property (ECF No. 150) is **DENIED.**

**AND IT IS SO ORDERED.**